UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.

LATANYA NEKESHA NOTICE,

          Defendant.
_____

**DECISION AND ORDER**
13-CR-55(LJV)(HBS)

      Latanya Nekesha Notice, a Jamaican national, faces charges relating to an attempted border crossing on January 23, 2013, during which she and her co-defendant, Horace Garfield Tajah, allegedly lied to U.S. Customs and Border Protection ("CBP") officers.  *See* Docket Item 10.  In her omnibus pretrial motions, Notice moved to suppress statements that she made to those officers.  *See* Docket Item 23.

## **BACKGROUND**

      This Court referred this case to United States Magistrate Judge Hugh B. Scott for all pretrial matters, including those that a magistrate judge may hear and determine, *see* 28 U.S.C. § 636(b)(1)(A), and those that a magistrate judge may hear and thereafter file a report and recommendation, *see* 28 U.S.C. § 636(b)(1)(B).  Docket Item 11.  After holding a suppression hearing, *see* Docket Items 73, 79, & 80, Judge Scott issued a Report and Recommendation, dated July 11, 2016, in which he recommending denying Notice's motion to suppress.  *See* Docket Item 124.

      The defendant objected to the Report and Recommendation, *see* Docket Item 130, and the government responded, *see* Docket Item 132.  On October 6, 2016, this

Court heard oral argument and requested additional briefing. *See* Docket Item 134. In particular, the Court was interested in which specific statements the defendant was seeking to suppress and the basis on which they should be suppressed in light of Second Circuit case law such as *United States v. FNU LNU*, 653 F.3d 144 (2d Cir. 2011). Therefore, on October 21, 2016, the defendant submitted an additional memorandum in support of her objections, *see* Docket Item 135, and on October 27, 2016, the government submitted its response, *see* Docket Item 136.

This Court "must consider de novo any objection to the magistrate judge's recommendation" and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *see* 28 U.S.C. § 636(b)(1). After conducting a de novo review, this Court finds the defendant's objections to be without merit.

## PRIMARY AND SECONDARY INSPECTIONS

As both sides agree, the first question this case presents is "when does permissible border interrogation become custodial questioning for purposes of *Miranda*?" Docket Item 135 at 3 (quoting *United States v. Tudoran*, 476 F. Supp. 2d 205, 211 (N.D.N.Y. 2007)). In answering that question, the Court is mindful that "'custody' for *Miranda* purposes is not [necessarily] coterminous with . . . the colloquial understanding of custody." *FNU LNU*, 653 F.3d at 152–53. "[T]he overarching 'custody' question [for *Miranda* purposes] is whether 'a reasonable [person] in the suspect's position would have understood' herself to be 'subjected to restraints comparable to those associated with a formal arrest.'" *Id.* at 153 (quoting *Georgison v. Donelli*, 588 F.3d 145, 155 (2d Cir. 2009)).

In the context of a border crossing, a reasonable person expects a certain degree of "both constraints and questions" as he or she enters another country. *FNU LNU*, 653 F.3d at 154. In such a situation, "the content of the officer's questions"—viewed objectively—"substantially inform[s] whether a reasonable person would feel restrained in a way similar to a formal arrest." *Id.* In other words, "routine" questions relating to border admissibility—even at a secondary inspection—typically do not require *Miranda* warnings. *See id.* at 151; *United States v. Silva*, 715 F.2d 43, 46 (2d Cir. 1983).[1]

In this case, Notice claims that "[i]t was a criminal investigation, and she was immediately a target, even before she spoke one word to [the government agents]." Docket Item 135 at 3. She therefore seeks to suppress "all oral statements made to agents Major and Thomas."[2] *Id.* at 4; *see also id.* at 3 (arguing that "[a]ll agents admitted that prior to, during, and after her questioning, Miss Notice was **not** free to leave") (emphasis in original). But that argument is misplaced.

As Notice and Tajah attempted to enter the United States together, they were initially questioned—about who they were, where they were coming from, and where they were going—in the same way that anyone who attempts to cross the border is questioned. *See* Docket Item 88 at 10-14. The defendant completed that questioning

---

[1] *Silva*, 715 F.2d 43, often is cited for this proposition. In *FNU LNU*, the Second Circuit recognized that *Silva* has been abrogated to the extent that it relied "on the officer's *subjective motives* for the interrogation (including the uncommunicated existence of probable cause or intent to arrest) in determining whether the interaction qualifies as custodial." *FNU LNU*, 653 F.3d at 151 (emphasis added). But "*Silva*'s holding with respect to the (a) routineness of the (b) questioning (c) at the border, remains [Second C]ircuit law." *Id.*

[2] CBP Officers Major and Thomas conducted the primary and/or secondary inspections. *See generally* Docket Item 88.

without incident.  *See id.* at 13-14, 23.  But when Tajah, her companion, presented his passport, the CBP officer was not satisfied that the photo on the passport was Tajah's.  *See id.* at 17-18, 21.  The name on Tajah's passport was Kermar Notice, and defendant Latanya Notice explained that he was her brother.  *See id.* at 15, 19.  They had been in Jamaica, she said, had spent a few days in Canada, and were returning to the United States.  *See id.* at 19.  Nothing about that encounter was any different than anyone might expect on entering the United States from Canada.  *See, e.g.*, *id.* at 19-20, 22-23, 30.  And nothing about that encounter required *Miranda* warnings.  *See FNU LNU*, 653 F.3d 144; *Silva*, 715 F.2d 43.

Because the CBP officer still was unsure whether Tajah was the person on the passport he presented, Tajah and Notice were sent to secondary inspection.  *See* Docket Item 88 at 28, 35-36.  The objective purpose of that secondary inspection still was to determine admissibility to the United States.  *See, e.g.*, *id.* at 24, 76.  After Tajah was fingerprinted, however, CBP officers confirmed that he was not, in fact, the person he said he was.  *See id.* at 100-01.  Only then did the nature of the investigation change from determining admissibility into pursuing criminal charges.  At that point, *Miranda* warnings were required.  And at that point, they were given.  *See, e.g.*, Docket Item 65-1 at 2; Docket Item 86 at 21.

Based on this record, Judge Scott correctly concluded that "Notice went through reasonable border questioning that did not require *Miranda* warnings, and then she received *Miranda* warnings once the situation . . . turned into a custodial interrogation."  Docket Item 124 at 21.  Contrary to the defendant's argument, the questions asked at the primary and secondary inspections did not require *Miranda* warnings.

## **POST-WARNING INTERROGATION**

This Court likewise rejects the defendant's argument that her post-Miranda-warning statements were involuntary.

The voluntariness inquiry considers "whether a defendant's will was overborne," taking "into consideration 'the totality of all the surrounding circumstances.'" *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  Here, confronting Notice with the results of Tajah's fingerprinting and observing that she had given false information did not overbear her will or otherwise make her responses involuntary.  *See United States v. Awan*, 384 F. App'x 9, 15 n.2 (2d Cir. 2010) ("[W]e have 'held that law enforcement agents [are] free to discuss with [a defendant] the evidence against him and the reasons why he should cooperate.'") (quoting *United States v. Bye,* 919 F.2d 6, 9 (2d Cir.1990)); *United States v. Tutino*, 883 F.2d 1125, 1138 (2d Cir. 1989).  Neither did the length[3] or the conditions[4] of the interrogation.  *See, e.g., Green v. Scully,* 850 F.2d 894, 902 (2d Cir. 1988) (finding nothing in conditions of two-hour interrogation "that suggest[ed] an overbearing of [defendant's] will").  The defendant points to the fact that she took medication for her heart, which she said beats faster when she is "in closed in places."  Docket Item 65-2 at 2.  But that alone does not render her statements or the waiver of her rights involuntary, especially because there is no indication in the record that this had any

---

[3] The defendant was interviewed for approximately 90 minutes by each of two enforcement officers.  *See* Docket Item 86 at 118; Docket Item 87 at 17.  But that time included typing answers to questions and preparing a statement.  *See, e.g.*, Docket Item 86 at 30.

[4] According to CBP Officer Jann, the defendant was cooperative, unrestrained, and gave no indication "that she believed she was being coerced or threatened."  Docket Item 86 at 20-21, 31; *see also* Docket Item 88 at 22-23.

impact on her decision-making and because she could "take more [medication] as needed." *Id.*

## **CONCLUSION**

Upon de novo review, this Court agrees with Judge Scott that the defendant "has not demonstrated any reason to suppress the statements that she gave to the agents." Docket Item 124 at 21. Accordingly, this Court adopts Judge Scott's Report and Recommendation, dated July 11, 2016 (Docket Item 124), and the defendant's motion to suppress (Docket Item 23) is DENIED.

SO ORDERED.

Dated:   November 28, 2016
         Buffalo, New York

                                        *s/Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE